## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TREDARIOUS L. THOMAS** | § | **CIVIL ACTION NO. 2:21-cv-2151** |
| *Plaintiff* | § | |
| **v.** | § | |
| | § | |
| **INTERSTATE MANAGEMENT** | § | |
| **COMPANY, LLC d/b/a HAMPTON** | § | |
| **INN NEW ORLEANS CONVENTION** | § | |
| **CENTER and HIGHPOINTE** | § | |
| **HOTEL CORPORATION** | § | |
| *Defendant* | § | **JURY DEMAND HEREIN** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES** Plaintiff, **TREDARIOUS L. THOMAS**, through undersigned counsel, who files his Original Complaint against Defendants, **INTERSTATE MANAGEMENT COMPANY, LLC d/b/a HAMPTON INN NEW ORLEANS CONVENTION CENTER and HIGHPOINTE HOTEL CORPORATION.** Plaintiff respectfully states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 as it appears at 42 U.S.C. § 2000e *et seq.* and 42 U.S.C § 1981.

2. This Court has jurisdiction pursuant to the following statutes:

    a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

    b. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

1

3.  Plaintiff filed his Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on or about February 3, 2021 (Charge No. 461-2021-00208).

4.  The EEOC issued its Notice of Suit Rights on October 15, 2021. *See* Exhibit A. Plaintiff is afforded 90 days from his receipt of such Notice to commence suit, and the date of this filing is within the statutory period.

5.  Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Eastern District of Louisiana, specifically in Orleans Parish, making this Court the most appropriate Division for this suit.

## PARTIES

6.  Plaintiff is a citizen of the United States and resides in the City of Houston, State of Texas.

7.  Plaintiff is African-American and, as such, is a member of a protected class.

8.  Defendant, **INTERSTATE MANAGEMENT COMPANY, LLC d/b/a HAMPTON INN NEW ORLEANS CONVENTION CENTER** ("Interstate"), is a domestic limited liability company licensed to conduct and conducting business in the State of Louisiana. The acts complained of in Plaintiff's Complaint occurred in Orleans Parish, State of Louisiana, where Interstate performs a significant amount of business.

9.  Defendant, **HIGHPOINTE HOTEL CORPORATION** ("HighPointe"), is a Florida corporation licensed to conduct and conducting business in the State of Louisiana. The acts complained of in Plaintiff's Complaint occurred in Orleans Parish, State of Louisiana, where HighPointe performs a significant amount of business.

10. Upon information and belief, at the time of the alleged events, both in the year of the alleged discrimination and the year prior thereto, Interstate and HighPointe employed at least five-hundred (500) employees.

11. At all times relevant to this suit, Plaintiff worked for Defendants at the Hampton Inn New Orleans Convention Center located in New Orleans, Louisiana.

12. Upon good information and belief, HighPointe served as the management company over the New Orleans Convention Center until approximately March 18, 2020, at which time management services transferred to Interstate.

## FACTUAL ALLEGATIONS

13. Plaintiff began his employment with Defendant HighPointe as a Front Desk Agent at the Hampton Inn Convention Center ("the Hotel"), located in New Orleans, Louisiana, in September 2013. Plaintiff was promoted to Front Desk Supervisor in 2015, and he was promoted to Sales Coordinator two (2) weeks later.

14. In August 2016, Plaintiff received a superior performance review, at which time he was promoted to Sales Manager, awarded a $2,000.00 annual raise, and given his own market to oversee. Plaintiff's market was known as the "SMERF" Market, which included social, military, educational, religious, and fraternal engagements.

15. In approximately late 2016/early 2017, Plaintiff contemplated leaving his employ for another job after Defendant lost five (5) sales managers. In response, the Hotel's Vice President of Sales and Marketing, Kathy Jacobs ("Jacobs")(Caucasian), begged Plaintiff to retain his employment with Defendant, affording him a promotion to a Reservation Manager position in February 2017. Plaintiff remained employed as a Reservation

Manager until his untimely termination on October 5, 2020. At all relevant times, Jacobs oversaw the Sales operations.

16. Upon information and belief, Jacobs oversaw operations for four (4) properties: 1) the New Orleans Convention Center; 2) the Elmwood Hotel; 3) the New Orleans Carondolet Hotel; and 4) the Hampton Inn & Suites Garden District hotel.

17. In 2016, Plaintiff applied for a Director of Sales position for the Elmwood Hotel, which is a small, corporate sales hotel. Instead of giving Plaintiff the position, Jacobs hired Randall Michel ("Michel") (Caucasian) from outside the company. When Plaintiff asked why he did not receive the position, Jacobs stated, in the presence of General Manager, Charlene Martinez ("Martinez") (Caucasian), that the position would "limit [Plaintiff's] growth and that he "wouldn't be a good fit." During the conversation, Jacobs acknowledged that Plaintiff was imminently qualified for the position but that he would be "bored" due to the lower customer volume. Jacobs also stated that Plaintiff was an asset to the New Orleans Convention Center Hotel because was well-versed in all necessary operations systems, including OnQ, R&I, and Salespro.

18. Toward the end of 2019, Plaintiff approached Jacobs to negotiate a pay raise. In response, Jacobs offered a series of different incentive packages in lieu of increased pay, which Plaintiff declined. Ultimately, the parties agreed that Plaintiff would receive a raise, such that he was earning $46,000.00 per year.

19. In 2019, Plaintiff applied for a Director of Sales position at the New Orleans Convention Center. In contrast to Elmwood, the New Orleans Convention Center was 80 percent group sales, indicating a fast-paced, high-volume environment.

4

20. Notably, for the Hotel's current employees, there was no formal application process. Instead, Defendant's handbook provides that current employees had to vocalize their interest in positions to Jacobs or other hiring authority in order to "apply" or otherwise be considered for internal job vacancies. Jacobs again acknowledge Plaintiff's qualification for the position; however, she denied a right to interview for the position and stated that her hiring decision was final.

21. Jacobs awarded the New Orleans Convention Center Director of Sales position to Michel (Caucasian) in lieu of Plaintiff. At the time Michel received the position, he had no experienced with a high-volume environment, whereas Plaintiff had successfully performed in a high-environment role throughout his 6-year tenure with Defendant.

22. Plaintiff ultimately questioned Jacobs as to why she had awarded Michel the New Orleans Convention Center position. During the conversation, Plaintiff verbally stated his concern that he was being precluded from advancement on the basis of his race. Plaintiff verbally stated his concerns of this racially motivated failure to promote to both Jacobs and Martinez.

23. On February 12, 2020, Plaintiff requested contact information for HighPointe's Human Resources Department from Administrative Assistant, Angellec Walker. Ms. Walker instructed to contact HighPointe, and, when Plaintiff did so, he was informed that he needed to contact Mark Pate, the HighPointe "HR Manager."

24. Upon information and belief, Mark Pate was not a Human Resources Manager but was, instead, an Assistant Controller/IT Director.

25. Shortly thereafter, Plaintiff submitted a corporate complaint via email dated February 13, 2020. Therein, Plaintiff deliberately stated his concern that he had been passed over for a promotion on the basis of his race.

26. In addition to Plaintiff's corporate complaint, Plaintiff contacted the EEOC and submitted an inquiry; however, he did not proceed with filing a formal charge at that time.

27. Within mere hours after Plaintiff submitted the February 13, 2020 complaint, Jacobs and Martinez called him to a meeting in the boardroom, at which time they accused him of "threatening" the hotel.

28. On the evening of February 13, 2020, Plaintiff received a telephone call from Susan LNU, a Human Resources representative, to discuss the substance of his email complaint. At the end of the call, Plaintiff and Susan LNU agreed to another, follow-up phone call to take place in the near future.

29. On February 14, 2020, Jacobs and Martinez called Plaintiff into a boardroom for an impromptu meeting, at which time they questioned him about his corporate complaint and instructed him to resign from his employment. During the conversation, Plaintiff asked Jacobs and Martinez whether they had taken any issue with his workplace performance, and both Jacobs and Martinez confirmed that they had no problems with his performance whatsoever.

30. Upon  good information and belief, on March 18, 2020, Defendant Interstate purchased and acquired management of the New Orleans Convention Center, Elmwood, and Hampton Inn & Suites Garden District properties from HighPointe. At that time, all HighPointe employees rolled in as Interstate employees, including Plaintiff, Jacobs, and Martinez.

31. On March 20, 2020, approximately sixty (60) employees were furloughed as a result of COVID-19. While Defendant(s) claimed to maintain only a "skeleton staff," most of the managers were not furloughed.

32. Upon information and belief, approximately six (6) of the fifteen (15) managers were furloughed. Upon information and belief, the eight (8) of the managers that were not furloughed were Caucasian, and the one African-American manager not furloughed, Darius Miner, was a lower-level operations manager whose employment was outside Jacobs' scope of employment and thus not subject to her influence or control.

33. While Defendant(s) relayed to Plaintiff that only salaried managers would remain at the hotel during the furlough, Interstate retained Milene Rossi (Caucasian), a Sales Manager – subordinate to Plaintiff – in lieu of Plaintiff.

34. Although Plaintiff was a Reservation Manager, which was a supervisory and salaried position, he was included in the March 20, 2020 furlough.

35. Upon information and belief, two (2) of the furloughed individuals voluntarily discontinued their employment with Defendant

36. Of the four (4) managers subject to furlough and awaiting to, Interstate called at least two (2) back to work: 1) Clara Mohamad (Caucasian) returned to work in August 2020; and 2) Kami Dana (Caucasian) returned to work in approximately September 2020. Notably, Kami was considered Plaintiff's subordinate and had significant performance issues while working for now-Interstate's downtown location. Accordingly, the only two managerial employees remaining on furlough were Plaintiff and Brandy Eastwood, an African-American sales manager.

37. Upon information and belief, Kami Dana had not filed any complaints against HighPointe/Interstate or any of their respective agents/officers at the time she returned from furlough in approximately September 2020.

38. While Plaintiff was furloughed, Michel resigned from his position as Director of Services over the New Orleans Convention Center. Despite the opening, Jacobs did not award Plaintiff the position or otherwise ask him to return from furlough.

39. On October 5, 2020, Jacobs contacted Plaintiff via telephone and informed him that his employed was being terminated. During the call, she stated that Plaintiff would receive an email or hard letter explaining the basis for his termination; however, Plaintiff did not receive any further correspondence of any kind.

## FIRST CAUSE OF ACTION:
## RACIAL DISCRIMINATION IN EMPLOYMENT
*Pursuant to 42 U.S.C. 2000e et seq.*

40. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

41. Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).

42. Defendant HighPointe is an "employer" subject to the provisions of Title VII. At all relevant times, Defendant was an entity engaged in an industry affecting commerce who had fifteen or more employees for at least twenty weeks in the current or preceding calendar year.

43. Defendant Interstate is an "employer" subject to the provisions of Title VII. At all relevant times, Defendant was an entity engaged in an industry affecting commerce who had fifteen or more employees for at least twenty weeks in the current or preceding calendar year.

44. Plaintiff is African-American and is therefore a member of a protected class.

45. Plaintiff was amply qualified for his position as Reservation Manager. Not only was Plaintiff specifically promoted to the position, but he was able to perform all functions of his job without issue for nearly three (3) years.

46. Plaintiff was amply qualified for a Director of Services position. Plaintiff met all objective requirements of the position, as set forth in the job description.

47. Plaintiff was not selected for the Director of Services position in favor of a less tenured, less experienced individual.

48. Plaintiff's race was, at the very least, a motivating factor in the decision to not promote him and to fill the position with a Caucasian employee.

49. Plaintiff was selected for furlough in favor of several Caucasian managers.

50. Additionally, of the few managers that were also furloughed, Plaintiff and another African-American manager were terminated, whereas the Caucasian managers were asked to return to work in Fall 2020.

51. Plaintiff's race was, at the very least, a motivating factor in the decision to select Plaintiff for furlough on March 20, 2020.

52. Plaintiff's race was, at the very least, a motivating factor in the decision to not return Plaintiff from furlough and, instead, terminate his employment in October 2020.

53. Defendant's discrimination is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

54. Wherefore, Plaintiff asks this Honorable Court to find **HIGHPOINTE** and/or **INTERSTATE** liable for the violation of Title VII of the Civil Rights Act of 1964.

**SECOND CAUSE OF ACTION:**
**RETALIATION**
*Pursuant to 42 U.S.C. § 2000e-3(a)*

55. Plaintiff incorporates and reinstates each of the above paragraphs as if fully set forth herein.

56. Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

57. Plaintiff reported, via formal corporate complaint, what he perceived to constitute unlawful racially discriminatory promotional practices, specifically including Jacobs' selection of Michel for the Director of Services position.

58. Plaintiff's complaints of supervisors engaging in open racial discrimination constitutes opposition activity for purposes of Title VII.

59. Shortly after Plaintiff submitted his hotline complaint, Jacobs and Martinez took deliberate action to try and force Plaintiff to resign.

60. While Plaintiff refused to resign, Defendant(s) nevertheless furloughed his employment on March 20, 2020 – approximately one (1) month after his complaint.

61. Thereafter, and although Interstate was able to return several employees from furlough in Fall 2020, Interstate refused to return Plaintiff and, instead, terminated his employment on October 5, 2020.

10

62. Defendants, through their agents, supervisors and/or employees, in a continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of his employment in retaliation for him opposing what he believed to be unlawful conduct.

63. Plaintiff's protected activity was a "but-for" cause of Defendants' decision to: 1) select him for furlough and, thereafter, 2) terminate his employment in October 2020.

64. Defendant failed to act in accordance with 42 U.S.C. § 2000e-3(a).

65. Defendant's retaliation is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

66. As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered monetary losses in the form of lost wages, lost earning opportunities, and other monetary losses to be more fully developed at the trial of this matter.

67. As a result of Defendants' discriminatory conduct, Plaintiff has suffered non-monetary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses to be more fully developed at the trial of this matter.

68. Wherefore Plaintiff asks this Honorable Court to find **HIGHPOINTE** and/or **INTERSTATE** liable for the violation of 42 U.S.C. § 2000e-3(a).

## THIRD CAUSE OF ACTION:
### Violation of 42 U.S.C. § 1981

69. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

70. 42 U.S.C. § 1981 protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race. 42 U.S.C. § 1981(a). The

statute currently defines "make and enforce contracts" to include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b). 42 U.S.C. § 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts.

71. Plaintiff incorporates the contents of Paragraphs 1-62 by reference, as Title VII and § 1981 claims are analyzed under the same evidentiary standards.

72. Wherefore, Plaintiff asks this Honorable Court to find that, under 42 U.S.C. § 1981, Defendants **HIGHPOINTE** and/or **INTERSTATE** liable for the violation of 42 U.S.C. § 1981.

## PRAYER

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Reasonable attorney's fees, with conditional awards in the event of appeal;

(c) Pre-judgment interest at the highest rate permitted by law;

(d) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(e) Costs, including expert fees;

(f) Reasonable and necessary medical care and expenses in the past and future;

(g) Mental anguish damages in the past and future;

(h) Injunctive relief; and

(i) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

_____

**DEMAND FOR JURY TRIAL**
_____

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

**Respectfully Submitted**,

**SUDDUTH & ASSOCIATES, LLC**
Attorneys-at-Law
1109 Pithon St.
Lake Charles, Louisiana 70601
Tel: (337) 480- 0101
Fax: (337) 419- 0507

**BY:** */s/ James E. Sudduth, III*
       **JAMES E. SUDDUTH, III, #35340**
       **KOURTNEY L. KECH, #37745**
       **PIERCE A. RAPIN, #38579**
       *Counsel for Plaintiff*

13